BRENDA HEILIG THOMASON, EMPLOYEE, PLAINTIFF v. FIBER INDUSTRIES, EMPLOYER; NORTHWESTERN NATIONAL INSURANCE COMPANY, CARRIER, DEFENDANTS

No. 8410IC1162

(Filed 3 December 1985)

1. **Master and Servant §§ 68, 65— costochondritis caused by lifting rolls of spun yarn—occupational disease**

   The Industrial Commission did not err by awarding plaintiff permanent partial disability for costochondritis under N.C.G.S. 97-53(13) where the evidence tended to show that the disabling inflammation of the cartilaginous tissues between plaintiff's sternum and ribs was caused by the constant lifting of 50-pound cakes of yarn required by her employment; that the causes and conditions of her inflammation are peculiarly characteristic of her employment; and that her work as a repetitive lifter placed her at a greater risk of contracting the inflammatory disease process than the public at large.

2. **Master and Servant § 72— partial disability—no finding as to average wage after disablement—remanded**

   The Industrial Commission erred by computing the compensation that is due plaintiff because of her partial disability from costochondritis where there was no finding as to the average weekly wage that plaintiff was able to earn after she became disabled and no finding as to the difference between that amount and her previous weekly wage. N.C.G.S. 97-30.

APPEAL by defendants from the Opinion and Award of the North Carolina Industrial Commission filed 4 September 1984. Heard in the Court of Appeals 15 May 1985.

The opinion and award defendants appeal from requires them to compensate plaintiff under the Workers' Compensation Act for a permanent partial disability resulting from costochondritis, an inflammation of the cartilage-like tissue between the ribs and breastbone or sternum, which the Commissioner concluded is "the result of an occupational disease . . . due to causes and conditions characteristic of and peculiar to her employment and which is not an ordinary disease of life to which the general public is equally exposed."

The evidence tending to support the Commission's award was to the following effect: In 1974 plaintiff, who is now only thirty-three years old, began working for defendant Fiber Industries as a doffer in the spinning room. Her job as a doffer required her to lift rolls or cakes of spun yarn from a spinning machine and hang

them on pegs, some higher than her head, affixed to a buggy. Each cake or roll of yarn weighed about 50 pounds; her machine spun 32 cakes of yarn every forty-five minutes; and during each regular eight hour work day the yarn that she doffed weighed about 20,000 pounds altogether. During the first four years of plaintiff's employment she was in good health, had no chest troubles, and did not miss a day of work. In October, 1978, because of a special problem in the plant, she had to help move some drums that weighed several hundred pounds. The lift truck she used did not work properly and a drum fell toward her and struck her in the chest, causing it to swell. After that plaintiff had constant difficulty with her chest, required much medical treatment and missed much work. On 14 July 1982 she was placed on long-term disability. Dr. Blount, a family practitioner who saw her the day the drums were moved and has treated her ever since, diagnosed her condition as costochondritis, which he attributed to the constant lifting required by her job. In his opinion the injury resulting from the drum did not cause her costochondritis, but only called attention to it. Dr. Patrick Box, a specialist in internal medicine and rheumatology who assisted in treating plaintiff, agreed with Dr. Blount's diagnosis, and testified that her work, constantly lifting cakes of yarn, exposed her to a greater risk of contracting costochondritis than the general public.

    *Corriher, Whitley & Busby, by James A. Corriher, for plaintiff appellee.*

    *Brinkley, Walser, McGirt, Miller & Smith, by G. Thompson Miller, for defendant appellants.*

    PHILLIPS, Judge.

[1]   The main question raised by this appeal is whether under the circumstances of this case plaintiff's established costochondritis is an occupational disease under our Workers' Compensation Act. Though several similar diseases and conditions that are sometimes caused by the wear and tear of employment — *blisters*, G.S. 97-53(16); *bursitis*, the inflammation of a bursa, a small soft tissue sac often lying between bones and muscles, G.S. 97-53(17); *synovitis*, the inflammation of any synovial membrane, G.S. 97-53(20); and *tenosynovitis*, the inflammation of a synovial membrane that protects a tendon, G.S. 97-53(21) — have been legisla-

tively designated as occupational diseases subject to the conditions stated in the respective statutes, costochondritis has not been so designated and can be an occupational disease only as and when G.S. 97-53(13) permits. Under G.S. 97-53(13), as its terms expressly provide and our Supreme Court has held on several occasions, "[a]ny disease" is an occupational disease *if* it is due to causes and conditions peculiarly characteristic of the worker's particular trade, occupation or employment, and *if* the disease is not one that the general public, outside of the particular employment, stands an equal risk of contracting. *Hansel v. Sherman Textiles*, 304 N.C. 44, 283 S.E. 2d 101 (1981); *Booker v. Duke Medical Center*, 297 N.C. 458, 256 S.E. 2d 189 (1979). The statute contains no other conditions and excludes no particular diseases, including the ordinary diseases of life, though hearing loss is expressly covered by another provision. The only exclusion the statute makes is by its limiting conditions, which exclude such diseases as the public is exposed to equally with workers in the particular trade or occupation. *Rutledge v. Tultex Corp.*, 308 N.C. 85, 93, 301 S.E. 2d 359, 365 (1983). Applying these principles to the record before us leads to the conclusion that the Commission's decision on this question is correct and we affirm it.

Dr. Blount, her primary treating physician, expressed the opinion that the probable cause of her disabling costochondritis is "repeated use of the chest wall in lifting, straining, pulling," and that her job with defendant placed her at greater risk of contracting or aggravating costochondritis than the general public. Dr. Patrick Box, a specialist in internal medicine and rheumatology, in his deposition testified that:

Mrs. Thomason's employment at Fiber Industries involving the repetitive lifting exposed her to a greater risk of getting costochondritis than the public generally.

\* \* \*

I think, as a matter of a medical determination, the repetitive lifting would cause her to have symptoms which would then become a medical problem to her. I believe in the absence of doing the sort of work she was doing, that she might have inflammation or pain which would last for a day or two and then resolve. Her chance, compared to another person with

Thomason v. Fiber Industries

another type of job developing a chronic problem, is much greater because of the type work that she is doing.

That this evidence and that of plaintiff as to the nature and extent of her work is support enough for the Commission's conclusion that plaintiff's disabling costochondritis is an occupational disease under G.S. 97-53(13) is clear, in our opinion. This evidence tends to show, as the Commission found, that the disabling inflammation of the cartilaginous tissues between her sternum and ribs was caused by her constant lifting of 50 pound cakes of yarn, as her employment required; and that the causes and conditions of her inflammation are peculiarly characteristic of her employment as, in effect, a repetitive lifter; and that her work as a repetitive lifter placed her at a greater risk of contracting the inflammatory disease process than the public at large, few of whom, it is safe to say, regularly and repeatedly lift anything weighing 50 pounds. That another medical expert testified that lifting cakes of yarn in her work did not cause her costochondritis is immaterial for our purposes, since conflicts and contradictions in the evidence are for the Commission to decide, not us. *Pardue v. Blackburn Bros. Oil & Tire Co.*, 260 N.C. 413, 132 S.E. 2d 747 (1963). Since the findings of fact on this point are supported by competent evidence and they justify the legal conclusions and decision, it must be affirmed. *Brice v. Robertson House Moving, Wrecking and Salvage Co.*, 249 N.C. 74, 105 S.E. 2d 439 (1958).

[2]   But, as defendants contend, the Commission erred in computing the compensation that is due plaintiff because of her partial disability. Subject to the limitations and percentages stated in the statute in partial disability cases, the weekly benefit due is based on the difference between the employee's average weekly wage before the injury and average weekly wages which he is able to earn thereafter. Yet here no finding was made as to the average weekly wage that plaintiff was able to earn after she became disabled; nor was any finding made as to the difference between that amount and her previous average weekly wage of $293.88. Thus, the cause is remanded for the limited purpose of determining the weekly benefits due plaintiff in accord with G.S. 97-30.

Affirmed and remanded.

Judges BECTON and EAGLES concur.