At the time of her injury, the plaintiff worked for two employers. After a period of temporary total disability, the modest residual impairment from the injury prevented her from returning to her former employment with the defendant, but she was able to return to work with the other employer for increased hours and income, though earning less than she had prior to the injury in both employments. The Deputy Commissioner calculated total disability benefits based on loss of wages from the defendantonly. He aggregated pre-injury income from both employments and compared that total to post-injury earnings to determine the level of temporary partial disability benefits to which plaintiff was entitled pursuant to N.C. Gen. Stat. § 97-30. Both parties take exception to this decision. In light of the controlling Court decisions interpreting and applying the applicable statutes, we affirm.
The most important of these precedents is Barnhardt v. YellowCab Co., 266 N.C. 419, 146 S.E.2d 479 (1966). In that case, Justice (later Chief Justice) Sharp explained why the Commission was limited to awarding total disability benefits based on wages paid by the defendant only, albeit with little enthusiasm.
 It seems reasonable to us that the Legislature, having placed the economic loss caused by a workman's injury upon the employer for whom he was working at the time of the injury, would also relate the amount of that loss to the average weekly wages which that employer was paying the employee. Plaintiff, of course, will greatly benefit if his wages from both jobs are combined; but, if this is done, [the employer] Cab Company — and its carrier, which has not received a commensurate premium — will be required to pay him a higher weekly compensation benefit than Cab Company ever paid him in wages. Whether an employer pays this benefit directly from accumulated reserves, or indirectly in the form of higher premiums, to combine plaintiff's wages from his two employments would not be fair to the employer. Method (4) [the fourth sentence of N.C. Gen. Stat. § 97-2(5) defining "Average Weekly Wages"], "while it prescribes no precise method for computing `average weekly wages,' sets up a standard to which results fair and just to both parties must be related." Liles v. Electric Co., 244 N.C. 653, 658, 94 S.E.2d 790 794.
***************
 It is true, as plaintiff points out, that G.S. 97-2 (9) [defining "disability"] is drawn so as to give the employer the benefit of wages which plaintiff, after his injury, is able to earn from any other source. See Branham v. Panel Co., 223 N.C. 233, 236-37, 25 S.E.2d 865, 868. Thus, if plaintiff, while regularly employed as a bookkeeper, had been injured as a part-time construction worker to the extent that he was permanently unable to perform manual labor, his part-time employer might well escape all liability for compensation if plaintiff were still able to earn his regular bookkeeping wages. And this, even though the part-time employer's premiums had been computed on a payroll which included plaintiff's wages. The employer and his carrier thus benefit from other wages plaintiff is still able to earn, but escape liability for other wages he is no longer able to earn.
* * *
 This case brings into sharp focus not only the plight of plaintiff Barnhardt, but the potential plight of all workers who are concurrently engaged in more than one employment. So many workers are now, from economic necessity, "holding two jobs at once" that these quoted words were included among the definitions of moonlighting in Webster's Third New International Dictionary (1961). It is tragic indeed that plaintiff should be thus victimized by his diligence and his ambition to provide for his own — particularly since, in our society, voluntary idleness is frequently compensated. Only the Legislature, however, can remedy this condition.
Barnhardt, pps. 427-29. Plaintiff urges that we reconsider the statutory interpretation in Barnhardt in light of the vast changes in the compensation system since 1966. But none of these directly contradict the basis for the decision, and as Justice Sharp's opinion reminds us, it is our duty not to contrive a means of reaching beyond our role of applying the law as it has been interpreted when the Courts have addressed an indistinguishable fact situation.
We also disagree with defendants that the Deputy Commissioner's calculation of temporary partial disability is an indistinguishable fact situation. This is a matter of statutory interpretation, and the Courts have not interpreted N.C. Gen. Stat. § 97-30 that way. In Barnhardt, the Court accepted the defendants argument that the definition of "average weekly wages" in the "first declaration" of N.C. Gen. Stat. § 97-2(5) — i.e., "the earnings of the injured employee in the employment in which he was working at the time of the injury" — controlled when calculating benefits for total disability per N.C. Gen. Stat. § 97-29 under the fourth or "exceptional reasons" method because a "purpose of the Act . . . is . . . to insure a limited and determinate liability for employers." Barnhardt, p. 427.
However, the definitions in N.C. Gen. Stat. § 97-2 are prefaced with the phrase, "When used in this Article, unless thecontext otherwise requires —". Temporary partial disability benefits have consistently been determined by comparing earning capacity before and after injury, regardless of whether claimant was capable of returning to the same job or "employment". See e.g., Hall v. Thomason Chevrolet, Inc., 263 N.C. 569, 572-573139 S.E.2d 857 (1965) (Justice Sharp); Ashley v. Rent-A-CarCo., 271 N.C. 76, 82, 155 S.E.2d 755 (1967); Gupton v.Builders Transp., 83 N.C. App. 1, 348 S.E.2d 601 (1986). N.C. Gen. Stat. § 97-30 provides that ". . . where the incapacity for work resulting from the injury is partial, the employer shall pay . . . during such disability . . . (66 2/3%) of the difference between his average weekly wages before the injury and the average weekly wages which he is able to earnthereafter. . . ." To read into the term "average weekly wages" in this statute the restriction that it means only "the earnings . . . in the employment in which [employee] was working at the time of the injury" would mean that in every case the plaintiff was unable to return to the same employment, she would be entitled to benefits as if she was totally disabled. Defendant argues that only those pre-injury wages earned from the defendant should be compared against all the post-injury earnings from the other employer, and deny all benefits for plaintiff's loss of income — in effect defining "average weekly wages" two different ways where it appears twice in the same sentence. This is too tortured a construction for any statute, and particularly one that is to be construed liberally to effectuate the Legislative intent to award compensation for those injuries arising out of employment. Reeves v. Parker-Graham-Sexton, Inc.,199 N.C. 236 154 S.E. 66 (1930). Consequently, the Courts look instead to the definition of disability in N.C. Gen. Stat. § 97-2(9) — the "incapacity because of injury to earn the wages which the employee was receiving at the time of the injury in thesame or any other employment". The harmonizing principle seems to be that the definition of "disability" predominates when determining whether or how much compensable incapacity exists, and the definition of "average weekly wage" related in N.C. Gen. Stat. § 97-2(5) is invoked to effectuate the limited liability purpose in the circumstances in which employers and carriers would otherwise routinely be paying benefits at a rate higher than could be contemplated from the payroll on which premiums are calculated. Both terms also appear prominently in N.C. Gen. Stat. § 97-29, but as Justice Sharp pointed out in Barnhardt
(at 428-29), an employee impaired beyond the ability to do his former job is not entitled to benefits under either N.C. Gen. Stat. § 97-29 or § 97-30 if he can return to work earning the same or greater wages in another position. Temporary partial benefits are also limited to the maximum compensation rate calculated on wages paid by defendants. N.C. Gen. Stat. § 97-30;Thomason v. Fiber Industries, 78 N.C. App. 159, 162,336 S.E.2d 632 (1985), cert. denied, 316 N.C. 202, 341 S.E.2d 573
(1986). (Emphasis throughout ours.)
Upon review of all of the competent evidence of record with reference to the errors assigned, and finding no good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the award, the Full Commission AFFIRMS and ADOPTS the Opinion and Award of the Deputy Commissioner as follows:
Based upon all the competent credible evidence of record, the Full Commission makes the following
FINDINGS OF FACT
1. Plaintiff is a 33 year-old female, who has a real estate license as well as a medical assistant degree from Central Piedmont Community College and is currently enrolled in nursing school at Cabbarus Memorial Hospital in Concord attempting to become a registered nurse.
2. From 1985 until her automobile accident in February 1992 she was employed as an accountant by several different companies, which she learned to do as a result of on-the-job training, and before then had worked a year as a medical assistant for a physician.
3. In February 1992 plaintiff was involved in a hit and run accident not only sustaining injuries to her lumbar, thoracic and cervical spines as well as associated headaches; but because of her underlying emotional instability and resulting inability to cope with her injuries she had intense anxiety, ongoing panic attacks and developed very significant depression over her condition requiring a conservative course of treatment consisting of physical therapy, biofeedback and multiple medications, including anti-depressants, and (required) a prolonged period of recovery.
4. By October 1993 plaintiff had reached maximum medical improvement from her motor vehicle accident and retained permanent disabilities as a result of the same accident because of her episodic headache and persisting cervical, thoracic and lumbar pain. By that time, however, plaintiff had learned to cope with her continued symptoms and had returned to a functional level not only enabling her to attend nursing school, but to work two jobs.
5. One of the jobs was as a spice merchandiser for defendant-employer, which she began in February 1993 and the other at Belks as a counter manager for two cosmetic product lines, which was a lighter job primarily involving standing and selling cosmetic products as well as restocking her shelves and was one where there was assistance available to lift the boxes of cosmetics weighing between 25 and 30 pounds.
6. As a spice merchandiser for defendant-employer plaintiff was assigned to work at a number of Food Lion stores in the area and was there responsible for straightening merchandise on the shelves, restocking the shelves and ordering additional merchandise requiring her to lift boxes weighing as much as 50 to 75 pounds, which she is no longer able to do because of the May 16, 1994 and May 31, 1994 back injuries giving rise hereto.
8. At the time of the same injuries plaintiff earned an average weekly wage of $135.51 in her spice merchandiser job for defendant employer. She also earned an average weekly wage of $206.80 in her counter manager's job at Belks and thus at the time of her injury had the overall wage earning capacity of at least $342.31.
9. On May 13, 1994 while calling on a Food Lion store in Harrisburg as part of her duly assigned ordinary employment duties as a spice merchandiser plaintiff slipped on a wet spot on the floor and fell landing on her lower back and striking her head resulting in the first of two otherwise compensable injuries giving rise hereto, which materially aggravated plaintiff's existing permanent disabilities thereby proximately contributing to her ultimate disability.
When she fell plaintiff experienced pain in her back and head and the following morning returned to the neurologist, Dr. Anthony Wheeler, who had previously treated her for the injury sustained in her February 1992 automobile accident and prescribed medication and physical therapy.
10. Despite the same injury plaintiff was able to continue working for defendant-employer and while at another Food Lion store in Harrisburg on May 31, 1994 as part of her duly assigned ordinary employment duties as a spice merchandiser plaintiff was struck from behind by a loaded food cart throwing her against a wall striking the front of her head and shoulders resulting in the second of the otherwise compensable injuries giving rise hereto, which again materially aggravated plaintiff's existing condition described in the above findings of fact thereby proximately contributing to her ultimate disability resulting in her developing neck and low back pain as well as severe headaches with associated nausea, blackout spells, blurred vision and difficulty concentrating.
11. Although she experienced some of the same symptoms following her February 1992 automobile accident and did retain permanent disabilities from the same accident because of episodic headaches and persisting cervical, thoracic and lumbar pain; with extended treatment and a prolonged period of recovery plaintiff was ultimately able to deal with those problems by the time she reached maximum medical improvement from the same injury in October 1993 by again becoming functional enabling her to return to nursing school as well as hold two jobs between October 1993 and May 1994; however, she had not suffered any blackouts associated with her headaches nor had they become so severe as to cause her to vomit.
12. Initially plaintiff attempted to continue working for defendant-employer following her second injury, but ultimately on June 16, 1994 was forced to resign from defendant's employ because she was no longer capable of lifting the 50 to 75 pound boxes required by her spice merchandiser's job; but rather, was only capable of lighter work not lifting in excess of 20 pounds as a result of the back injuries sustained on May 16, 1994 and May 31, 1994 and to date only remains capable of that type of light duty work, which defendant-employer has never offered to provide her.
13. Although plaintiff was able to continue her lighter counter manager's job at Belks from June 16, 1994 until July 23, 1994 when her May 16, 1994 and May 31, 1994 injuries became totally incapacitating and Dr. Wheeler took her out of work altogether; she was no longer able to perform her spice merchandiser's job for defendant-employer or any other requiring her to lift more than 20 pounds resulting in a diminution in her wage earning capacity because she was no longer capable of earning the $342.31 per week that she did working for both defendant employer and Belks at the time of the same injury entitling her to compensation for her diminished wage earning capacity based on 2/3 of the difference between her $342.31 wage earning capacity at the time of the injury and the $210.35 she was able to earn doing her lighter counter manager's job for Belks during this period or compensation at a rate of $87.98 per week during the same period.
14. Because of her incapacitating pain plaintiff was also forced to discontinue the science course that she was attempting to take that summer at Central Piedmont Community College as part of her efforts to obtain a nursing degree.
15. Although with the conservative treatment provided by Dr. Wheeler plaintiff's condition improved enabling her to return to her lighter counter manager's job at Belks on or about October 18, 1993 as well as to return to nursing school; she has neither reached maximum medical improvement and/or the end of the healing period from and following her May 16, 1994 and May 31, 1994 injuries nor is she able to return to her spice merchandiser's job or other employment similarly requiring her to lift in excess of 20 pounds; but rather, remains in need of the same type of medical care that Dr. Wheeler had been providing until plaintiff became financially unable to afford it and (plaintiff) has suffered a partial diminution in her wage earning capacity since October 18, 1993 because she is no longer capable of earning the $342.31 per week that she did working for both defendant-employer and Belks at the time of the same injury entitling her to compensation based on the 2/3 of the difference between her $342.31 wage earning capacity at the time of her injury and the $210.35 wage that she has remained capable of earning since October 18, 1994 or compensation at a rate of $87.98 per week.
16. In the interim plaintiff was totally incapacitated from working as a result of the involved injuries during the period from July 23, 1994 until October 18, 1994.
***************
Based on the foregoing findings of fact, the Full Commission makes the following additional
CONCLUSIONS OF LAW
1. On May 16, 1994 and thereafter on May 31, 1994 plaintiff sustained injuries by accident arising out of and in the course of her employment, which materially aggravated her existing permanent disability as described in the above findings of fact thereby proximately contributing to her ultimate disabilities. G.S. 97-2(6).
2. As a result of the injuries by accident giving rise hereto plaintiff was temporarily partially disabled from June 16, 1994 to July 23, 1994 entitling her to compensation at rate of $87.98 per week. G.S. 97-30.
3. As a result of the injury by accident giving rise hereto, plaintiff was temporary totally disabled from July 23, 1994 to October 18, 1994 entitling her to compensation at a rate of $90.34 per week during the same period. G.S. 97-29.
4. Since October 18, 1994 plaintiff has been partially disabled as a result of the injuries by accident giving rise hereto entitling her to compensation at a rate of $90.34 per week for a maximum of 300 weeks from the date of her injuries, subject to a credit for the temporary total disability benefits paid in the interim.
5. Plaintiff has not yet reached maximum medical improvement as a result of the involved back injury; but rather, remains in need of the medical treatment recommended by Dr. Wheeler, which defendant-employer is obligated to provide as well as such other treatment as would reasonably tend to effect a cure of, provide needed relief from and/or lessen the period of disability associated with plaintiff's disabling back injury.
*****************
Based on the foregoing findings of fact and conclusions of law, the Full Commission enters the following
AWARD
1. Defendants Mid-Atlantic Marketing, Inc. and ITT Hartford Insurance Company shall pay plaintiff, on account of her temporary total disability, compensation of $90.34 per week during the period from July 23, 1994 to October 18, 1994.
2. Defendants shall pay plaintiff, on account of her partial disability, compensation at a rate of $87.98 per week from June 16, 1994 to July 23, 1994 and from October 18, 1994 to the scheduled hearing date and thereafter continuing at the same rate so long as she remains disabled, subject to the same partial disability benefits being paid for a maximum of 300 weeks from the date of injury and to a credit for the temporary total disability benefits paid for the period from July 23, 1994 to October 18, 1994 as well as a change of condition, medical or employment.
3. A reasonable attorney fee in the amount of 25 percent of the accrued net compensation benefits due under the above Award is hereby approved for plaintiff's counsel, which shall be deducted from the same Award and forwarded directly thereto. For the balance of his fee defendant-carrier shall forward every fourth check payable under the same Award directly to plaintiff's counsel.
4. To the extent the same are reasonably designed to tend to effect a cure of, provide needed relief from and/or lessen the period of disability therewith defendants shall pay all reasonable and necessary medical expenses incurred by plaintiff as a result of the injury by accident giving rise hereto when bills for the same are submitted in accordance with Industrial Commission Rules.
5. Defendants Mid-Atlantic Market and ITT Hartford Insurance Company shall bear the costs, including as part thereof an expert witness fee of $425.00 to Dr. David DuPuy, who appeared by way of deposition and gave expert medical testimony, as well as the $325.00 fee previously awarded Dr. Wheeler for his deposition testimony to the extent the same has not already been paid.
 S/ _______________________ J. RANDOLPH WARD COMMISSIONER
CONCURRING:
S/ _______________________ BERNADINE S. BALLANCE COMMISSIONER
S/ _______________________ LAURA K. MAVRETIC COMMISSIONER
JRW:md