***********
The Full Commission reviewed the prior Opinion and Award, based upon the record of the proceedings before Deputy Commissioner Berger and the briefs and oral arguments before the Full Commission. The appealing party has not shown good grounds to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award. Accordingly, the Full Commission affirms the Opinion and Award of Deputy Commissioner Berger, with minor modifications.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered by the parties as:
 STIPULATIONS
1. The following medical records identified as "Stipulated Exhibit 1" were received into evidence:
a. Medical notes and billing statement from Midtown Nalle Clinic;
b. Medical notes and billing statement from First Charlotte Physicians; and
c. Medical notes and billing statement from the Mecklenburg Pulmonary Specialist.
 ***********
Based upon the credible evidence of record and reasonable inferences drawn therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was a 55 year-old female who had served as a librarian assistant for the defendant-employer for over twenty years. She is a high school graduate and attended Central Piedmont Community College for three years.
2. During plaintiff's years of employment with defendant-employer, plaintiff worked at several locations. In approximately 1992, she began working at the North Park branch, where she remained until approximately 2001. Plaintiff testified that over the years she was exposed to pesticides, cleaning chemicals and mold.
3. Plaintiff testified that it was not until 1997 that she began having breathing problems. Plaintiff related the commencement of her symptoms to an incident at work.
4. In October 1997, when plaintiff entered the library for the defendant-employer, where she was assigned to work, she noticed fumes emanating from the carpet. During the preceding night, the carpet had been cleaned. Customarily, when the carpet was cleaned, the air conditioner would be left on during the night to ventilate the building. However, on this occasion, the air conditioner had not been turned on. At the hearing before the Deputy Commissioner, plaintiff testified that immediately upon entering the library she noticed that the air conditioning had not been turned on and that there were fumes in the room. Plaintiff testified that she was only in the building a few seconds before she quickly exited through the back door. Plaintiff testified that she experienced breathing problems that same day.
5. Plaintiff further testified that her breathing problems continued to intensify but she continued to work until 2001, when her symptoms became completely disabling. Plaintiff testified that she has fluid on her lungs, difficulty talking, difficulty breathing and significant shortness of breath.
6. On December 5, 2001, plaintiff presented to Dr. Carl Smart, a pulmonologist. In his deposition on July 23, 2004, Dr. Smart opined that because plaintiff stated that her symptoms started after she was exposed to some chemical, it is highly reminiscent of reactive airway disease that can manifest itself as asthma. Dr. Smart also testified that in the strictest definition, reactive airway disease is usually the result of having been exposed to an acute irritant and that although exposure can be cumulative, in the strictest sense, reactive airway disease is the result of one exposure.
7. Dr. Smart testified that he did not know the cleaning solution to which plaintiff was exposed in October 1997 but whatever it was, he believed there was a presumption that plaintiff became symptomatic when she walked into the building and was exposed to it. However, Dr. Smart also explained that patients could have underlying diseases that are smoldering and then manifest at a particular point. In plaintiff's case, Dr. Smart opined that plaintiff's exposure to the carpet cleaning solution was the "hallmark" event in the development of her symptoms.
8. Dr. Smart also opined that almost anything a person breathes could be an irritant as even the ozone has an affect on the respiratory system. Dr. Smart testified that if someone, who is hypersensitive, inhales dust, it could trigger an asthma-like process.
9. In his deposition, Dr. Smart further testified that although plaintiff worked in a library, he did not see more library workers with plaintiff's symptoms than other occupations. Dr. Smart opined that just because someone works in a building does not mean that that individual is at a greater risk than someone else for developing asthma or reactive airway disease.
10. In his deposition testimony, Dr. Smart opined that plaintiff was permanently disabled due to her lung disease based on the fact that she continued to complain of dyspnea on exertion and shortness of breath.
11. As of the date of the hearing before the Deputy Commissioner, plaintiff had not returned to work.
12. The plaintiff asserts that she developed asthma in October 1997 when she was exposed to a cleaning fluid odor in the air in the library that was not ventilated as usual and that this constituted an interruption of her regular work routine and the introduction of an unlooked for and untoward event, which was unexpected.
13. Although plaintiff did not file an Industrial Commission Form 18, Notice of Accident to Employer, on August 29, 2002, plaintiff filed a Form 18B, Claim by Employee, Representative, or Dependent for Lung Disease, Including Asbestosis, Silicosis, and Byssinosis. This was over four years from the date on which plaintiff claimed to have been injured from her exposure to the carpet cleaning chemicals in October 1997.
14. There was no evidence to indicate that defendant-employer engaged in any conduct that would have led plaintiff to believe that she did not have to file a claim for an injury by accident within two years.
15. The Full Commission finds that the plaintiff failed to file her claim for an injury by accident within two years after the alleged injury and therefore her claim for an injury by accident is barred.
16. The Full Commission finds that the cleaning of carpets in the workplace, as well as in homes, hotels and other business establishments, is a normal and customary practice and not one that is characteristic of and peculiar to plaintiff's employment as a library assistant.
17. There is insufficient evidence to support a finding that any chemicals in the carpet cleaning solution were in such form or quantity, or used with such frequency, as to cause an occupational disease or that the chemicals placed the plaintiff at a greater risk for contracting a disease.
18. There is insufficient evidence to support a finding that plaintiff's exposure to chemicals in the carpet cleaning solution in the workplace placed her at an increased risk in aggravating a pre-existing asthmatic condition than other members of the general public.
19. Plaintiff did not introduce further evidence to support her allegations of exposure to mold or other any other chemical.
20. Plaintiff has failed to prove that she contracted an occupational disease which was due to causes and conditions characteristic of and peculiar to her employment with defendant-employer and which excluded all ordinary diseases of life to which the general public was equally exposed.
 ***********
Based upon the foregoing stipulations and findings of fact, the undersigned make the following:
 CONCLUSIONS OF LAW
1. Proper filing of a claim within two years after the accident is a condition precedent to jurisdiction by the North Carolina Industrial Commission N.C. Gen. Stat. §97-24(a).
2. The timely filing of a claim for compensation is a condition precedent to the right to receive compensation for a work-related injury, and the failure to file a claim within two years after the injury acts as a jurisdictional bar for the Industrial Commission. N.C. Gen. Stat. § 97-24; Reinhardt v. Women's Pavilion,102 N.C. App. 83, 401 S.E.2d 138 (1991).
3. Defendants are not estopped to rely upon N.C. Gen. Stat. § 97-24 in bar of plaintiff's claim. N.C. Gen. Stat. § 97-24.
4. The time of notice of an occupational disease runs from the date that competent medical authority has advised the employee that he or she has an occupational disease. N.C. Gen. Stat. § 97-58(b).
5. Any disease is an occupational disease if it is due to causes and conditions particularly characteristic of the worker's particular trade, occupation or employment, and if the disease is not one that the general public, outside of the particular employment, stands an equal risk of contracting." N.C. Gen. Stat §97-53(13); Thomason v. Fiber Industries, 78 N.C. App. 159,161, 336 S.E.2d 632, 633 (1985), cert. denied,316 N.C. 202, 341 S.E.2d 573 (1986).
6. Three elements are necessary to show the existence of a compensable occupational disease: "(1) the disease must be characteristic of persons engaged in a particular trade or occupation in which the plaintiff is engaged; (2) the disease must not be an ordinary disease of life to which the public is equally exposed; and (3) there must be a causal connection between the disease and the plaintiff's employment." Jarvis v. Food Lion,134 N.C. App. 363, 367, 517 S.E.2d 388, 391 (1999), citing Hansel v. Sherman Textiles, 304 N.C. 44,283 S.E.2d 101 (1981).
7. A disease is characteristic of a profession when there is a recognizable link between the nature of the job and an increased risk of contracting the disease in question. Booker v. Medical Center, 297 N.C. 458,256 S.E.2d 189 (1979). Plaintiff has failed to show that she was at an increased risk of contracting reactive airway disease or asthma due to her employment with defendant-employer.
8. Where plaintiff does not prove that her particular employment conditions placed her at a greater risk than the general public of contracting a disease, plaintiff is not entitled to compensation under N.C. Gen. Stat. §97-53(13).
9. Plaintiff's exposure to chemicals contained in the carpet cleaning solution was not characteristic of persons engaged as a librarian assistant and did not place her at a greater risk in sustaining an asthmatic condition or reactive airway disease. There is no causal connection between the disease and plaintiff's employment. Therefore, plaintiff did not contract an occupational disease, which was due to causes and conditions characteristic of and peculiar to her employment. N.C. Gen. Stat. § 97-53(13); Booker v.Medical Center, supra.
10. Plaintiff is not entitled to benefits under the Workers' Compensation Act. N.C. Gen. Stat. § 97-2 etseq.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the undersigned enter the following:
 AWARD
1. Plaintiff's claim for compensation for asthma or reactive airway disease she has sustained as a result of an injury by accident must be, and the same is hereby, DISMISSED for lack of jurisdiction.
2. Plaintiff has not proven that she contracted a compensable occupational disease and therefore, her claim must be DENIED.
3. Each side shall pay its own costs.
This the ___ day of June 2005.
 S/_____________ PAMELA T. YOUNG COMMISSIONER
CONCURRING:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER